UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LIBERTARIAN NATIONAL COMMITTEE, INC., THE LIBERTARIAN PARTY OF KENTUCKY and DAVID PATTERSON, | ) ) ) ) | Civil No.: 14-63-GFVT |
| Plaintiffs, | ) ) | **MEMORANDUM OPINION** |
| V. | ) ) ) | **&** **ORDER** |
| DR. TERRY HOLIDAY, ET AL. | ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Kentucky Educational Television (KET) plans to host the only statewide, televised debate between the two major party candidates for Kentucky's United States Senate seat: Mitch McConnell, a Republican, and Alison Lundergan Grimes, a Democrat. The candidates are scheduled to face off on "Kentucky Tonight" the evening of October 13, 2014. Now, David Patterson, the Libertarian Party of Kentucky's candidate seeks to require KET to include him in the debate. Patterson alleges that the Defendants' decision to exclude him violates both his constitutional rights to free speech and due process and asks this Court to enjoin them from excluding him from the debate. *Id.* This question, however, is not yet before the Court. Of more immediate concern is KET's motion to dismiss the suit wherein KET alleges that Patterson,

1

pursuant to the doctrine of *laches*, is prohibited from proceeding.[1] [R. 11.]

**I**

On August 11, 2014, Mr. Patterson received enough signatures to become an official candidate in the U.S. Senate race. [R. 16 at 4.] On August 18, the Libertarian Party of Kentucky (LPK) issued a press release expressing disappointment that KET had decided not to include Patterson in the debate field. [R. 13 at 3.] Defendants contend that this press release evidences the fact that Patterson knew of the pending claim as long as six weeks before he filed a complaint. [R. 11-1 at 2.] The following day, on August 19, the LPK issued an open records request to KET which was served on August 20. [R. 13 at 4.] On August 25, KET responded to the records request, by turning over approximately 1,200 pages of documents. [R. 13 at 5.] Plaintiffs contend that it was this date, August 25, when they first received information from KET, to form the basis of a Complaint. [R. 13 at 5.] Between August 26 and September 9, these documents were reviewed. [R. 13 at 5.] KET contends this delay was unreasonably slow (they actually describe the pace as "leisurely"). [R. 11-1 at 6.] Following the document review, Patterson sought to find legal counsel to take the case. The ACLU of Kentucky reviewed the documents but elected not to provide representation. Plaintiffs interviewed other candidates on September 11 and 12, and Counsel for the Plaintiffs was retained on September 18. [R. 13 at 6-7.] Counsel for Plaintiffs took ten days (seven business days), between September 18 and 28 to review and organize documents, research, acquire declarations, and draft the Complaint which

---

[1] While the Libertarian National Committee, The Libertarian Party of Kentucky, and David Patterson are all Plaintiffs, for simplicity the Court refers only to Patterson. Similarly, because Patterson sues eleven individuals, in their official capacities as Commissioners of the Kentucky Department of Education, as Members of the Kentucky Authority for Educational Television, and in their respective leadership positions within KET, the Court refers to these Defendants in the collective as KET.

was ultimately filed in this Court on September 28. [R. 13 at 7; R. 1.]

II

KET seeks to dismiss Plaintiffs' claims on the grounds that they should be barred by the doctrine of laches. [R. 11-1.] "It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217 (2005). The doctrine of laches bars claims where two elements are present: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282 (1961); *see also Plaza Condominium Ass'n, Inc. v. Wellington Corp.,* 920 S.W.2d 51, 54 (Ky.1996) (explaining that laches bars claims "where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action").

KET argues that Plaintiffs were not sufficiently expeditious in asserting their claims and, as a result of this delay, that KET has been prejudiced to the extent that Plaintiffs' case should be dismissed. In support of its position, KET directs the Court to a number of election-based cases where the doctrine of laches barred each respective plaintiff's claims. *See Arizona Pub. Integrity Alliance Inc. v. Bennett*, 2014 WL 3715130 (D. Ariz. June 23, 2014); *Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980); *Gelineau v. Johnson*, 896 F. Supp. 2d 680 (W.D. Mich. 2012), *aff'd* (Sept. 19, 2012). These cases, however, are not all that instructive because the persons being potentially prejudiced in a ballot-access case are not similarly positioned to KET; rather, the prejudiced parties are normally either the opposing candidate or, through delays in the administration of justice, society as a whole. *See Arizona Pub. Integrity Alliance Inc. v. Bennett*,

3

2014 WL 3715130 (D. Ariz. June 23, 2014). The cases are distinguishable on other grounds as well.

In *Arizona Pub. Integrity Alliance Inc. v. Bennett*, 2014 WL 3715130 (D. Ariz. June 23, 2014), the plaintiffs challenged the constitutionality of a state statute that required statewide candidates to collect a set number of signatures in each county to get a candidate on the ballot. *Id.* The Court, in dismissing the case on the basis of laches, noted that the statute being challenged was not new and that the plaintiffs had been looking at the constitutionality of the statute for over six months. *Id.* at *2. In *Gelineau v. Johnson*, 896 F. Supp. 2d 680, 682 (W.D. Mich. 2012), *aff'd* (Sept. 19, 2012), the Court concluded that challenges made to the State's policy (referred to as the "sore-loser statute") that "[n]o person whose name was printed or placed on the primary ballots or voting machines as a candidate for nomination on the primary ballots of 1 political party shall be eligible as a candidate of any other political party at the election following that primary." Mich. Comp. Laws § 168.695. The Court concluded that laches barred the challenge on the grounds that the plaintiffs knew of their claim's potential as early as May 2 but did not file suit until September 11. *Id.* Finally, in *Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980), the plaintiff wanted his name on the ballot as a candidate for the Democratic presidential nomination. The Sixth Circuit concluded that laches barred Kay from proceeding with his case:

> As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights. In this case, Kay waited until nearly two weeks after he knew the choice of the candidates would be made and further delayed eleven days before filing suit. During this time, the state proceeded with election preparations.

*Kay*, 621 F.2d at 813. The Sixth Circuit concluded that because the plaintiff failed to "press his case" in the 25 days following his injury that dismissal was appropriate. *Id.* This, again, is distinguishable because the prejudice discussed in *Kay* was to the State's election machinery whereas here the prejudice does not relate to the putting on of an election but, rather, a debate. Put another way, reprinting ballots is far more burdensome than adding a podium.

Ultimately, the question boils down to whether Patterson's delay was unreasonable and whether it prejudiced KET. While, with greater diligence, the Complaint perhaps could have been filed a few days earlier, Patterson cannot be said to have sat on his rights for such a long time that the doctrine of laches prohibits him from proceeding. Patterson did not sit on his rights at all. Rather, he just did not act fast enough for Defendants' liking. An illustrative case is that of Ralph Forbes who made a similar challenge in *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998). In that case, which will undoubtedly be the topic of much greater discussion in future orders of this Court, Forbes was informed that he would not be able to participate in the public television debate on September 4, 1992. *Id*. at 670. He did not file suit until October 19— a full 45 days later—yet that case proceeded all the way to the Supreme Court despite the passage of that time. *Id.*

Second, the Court understands that KET feels rushed in dealing with this issue, but this rush, and whatever prejudice results from Patterson's minimal delays, is not unfair. Unlike the cases cited by KET in its briefing, Patterson could not have had knowledge of the fact that he would not be invited to the debate early enough to make this anything other than what it is – a last-minute request for injunctive relief. Furthermore, as discussed earlier, the cases that KET cites in its briefing refer to prejudice borne by candidates and the state when candidates levy last-

5

minute challenges to state laws regarding ballot access.  Again, this is a fundamentally different situation than that which the Court presently faces.  When parties request injunctive relief, things are commonly rushed and this case is no exception.  While it might be an inconvenience to KET, this is not a reason to justify dismissal.

**III**

Accordingly, the Court being sufficiently advised, hereby **ORDERS** that Defendants' Motion to Dismiss is **DENIED.**

This 6th day of October, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge