**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT
CASE NO. 3:14-cv-00063-GFVT**

**LIBERTARIAN NATIONAL COMMITTEE, INC.,                    PLAINTIFFS
ET AL.**

**VS.**

**DR. TERRY HOLIDAY, ET AL.                    DEFENDANTS**

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND

In their Response and Objection to Plaintiffs' Motion for Leave to File an Amended Complaint, Defendants make certain arguments that have been expressly rejected by the United States Supreme Court, take other positions that have been specifically rejected by the Sixth Circuit Court of Appeals, and take yet other positions that are unsupportable by the facts and law. Their arguments are too clever by half. At the outset, it appears that the Motion, filed on November 7, 2014, was timely for the "amendment as a matter of course" under FRCP 15, and, if so, leave should be granted. However, even if that is not the case, the Amended Complaint is supported by the facts, and the law, and, consequently, Plaintiff's Motion to Amend should be granted.[1]

Again, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility

---

[1] On 12/3/2014, Plaintiffs moved for leave to file excess pages in connection with this reply [RE#36]. Defendants opposed that routine request on 12/5/2014 [RE#37], and no ruling was entered as of the date this pleading was due. Plaintiffs chose to be safe, rather than sorry, and removed significant portions of their reply, including citation to certain additional authority and significant analysis of relevant cases, to comply with the page limitations of the local rules.

of amendment." *Brumbalough v. Camelot Care Ctrs.*, 427 F.3d 996, 1001 (6th Cir. 2005). Defendants do not address, and apparently concede, that there was no undue delay in this filing, there was no lack of notice, no bad faith, no repeated failures to cure deficiencies, and no undue prejudice, and thus appear to concede that each of these factors favor permitting amendment. They argue only futility.

1.    Defendants arguments concerning the state of the proceedings to date

As the Sixth Circuit held in *Wilcox v. United States*, 888 F.2d 1111 (6th Cir. 1989), "[a]s a general rule, decisions on preliminary injunctions do not constitute law of the case and 'parties are free to litigate the merits.'" (citations omitted). Defendants' arguments about the findings in the preliminary injunction decision, do not constitute the law of the case, and cannot be the basis of any defense the Defendants now assert. *Id. See, also, University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (same). Under this binding authority from both the Sixth Circuit and the U.S. Supreme Court, any "findings" made to date do not – and cannot – serve as a mechanism to shield Defendants from liability, serve as a basis for granting qualified immunity, and cannot be used for any other purpose. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Camenisch*, 451 U.S. 390, 395. "Given this limited purpose, and given the haste that is often necessary … a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* at 395. Thus, any findings of fact and conclusions of law in a preliminary injunction proceeding "are not binding at trial on the merits." *Id.* at 395.

Given Defendants repeated attempts to rely on the preliminary injunction proceedings as a defense, their failure to address either the *Camenisch* or *Wilcox* case reflect, at the very least, a troubling failure on the part of Defendants to conduct any research into controlling authority that

stands for the exact opposite proposition that they take.  *Camenisch* likewise forbids, at this juncture and based on the state of the proceedings to date, simply proceeding to judgment as Defendants now urge this court to do.[2]  Finally, Defendants take issue with the fact that the new claims represent, in part, a change in litigation strategy, and that Plaintiffs are somehow bound by prior pleadings or proceedings in this matter.  This, too, is a position rejected by applicable precedent.  *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990) (observing that a party is not bound by an unsuccessful argument in a prior proceeding).

2. **The Proposed Amended Complaint States valid Claims and are Not Futile.**

A complaint is "futile" for purposes of amendment if it is not sufficient to survive a motion to dismiss under FRCP 12(b)(6).  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010).  The claims included in the proposed Amended Complaint survive such a motion.  A complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining facial plausibility, the court must construe the complaint in the light most favorable to the plaintiff – including drawing competing factual inferences in favor of the plaintiff and accepting as true the factual allegations in the complaint. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  Thus, matters outside the pleadings may not be considered. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); Fed. R. Civ. P. 12(d).  In other words, the analysis of whether

---

[2] There are other issues with this suggested approach.  The 30(B)(6) witness in this matter, Mr. Goodman, lacked knowledge about a number of topics in the 30(B)(6) notice.  Because of timing, objections were not raised – those same timing considerations effectively prevented an appeal of the preliminary injunction hearing.  Discovery can proceed at its usual pace at this point, where witnesses with actual knowledge can be examined, and where full discovery on documentary and other evidence can be obtained.

the Amended Complaint states a claim upon which relief can be granted begins, and ends, on the face of Plaintiffs' proposed Amended Complaint.

A.      **The individual capacity claims.**

The face of the Amended Complaint alleges sufficient facts to state a claim.  For example, paragraph 6 specifies that the "KET Programming Defendants" (Mike Brower, Timothy Bischoff, William Goodman and Deidre Clark) are sued in both their individual and official capacities.  In their claims for relief contained in paragraph 56, 69 and 76, Plaintiffs allege that these individuals were personally involved in violations of Plaintiffs' constitutional rights, resulting in damages to be measured by the cost of advertising and the value of exposure to Kentucky voters had Patterson been permitted to participate in the candidates' debate.

Where relief is sought under general law from wrongful acts of state officials, "the sovereign's immunity . . . does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally." *Ford Motor Company v. Indiana Department of Treasury*, 323 U.S. 459, 462 (1945).  The claims against the KET Programming Defendants in their individual capacities meet the test of *Lane v. Pulaski County, Kentucky*, 2014 WL 996293, *3 (E.D. Ky. 2014), as they sufficiently allege that the officials' conduct violated clearly established constitutional rights.

The qualified immunity inquiry asks two distinct questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009). To make this assessment, this Court looks to

4

decisions of the Supreme Court, its own decisions, and finally to decisions of other circuits. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). There need not be a prior case directly on point for a law to be clearly established; generalized statements of the law or a general constitutional rule already identified in the decisional law are sufficient. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010). *See, also, McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) (First Amendment case, no qualified immunity); *Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012) (First Amendment pretext viewpoint case; no qualified immunity).[3]  Cases cited, in the Amended Complaint, and in this Reply, make clear that the Plaintiffs' allegations involve rights that have been articulated and established in U.S. Supreme Court and Sixth Circuit precedent. Thus, the rights are clearly established.  Furthermore, viewing the factual allegations in the proposed Amended Complaint in the light most favorable to Plaintiffs (including drawing all inferences in favor of Plaintiffs), Plaintiffs have properly plead violations of those rights.

Again, the proposed Amended Complaint, when construed in the light most favorable to Plaintiffs, pleads violations of several constitutional rights; furthermore, because the rights at issue are clearly established, the Amended Complaint states a claim that overcomes qualified immunity, and is not futile.[4]

**B.      The "$100,000 criteria" allegations are properly pled and state a valid claim.**

Paragraphs 33, 34, 39 and 53 of the Amended Complaint state in detail the factual basis for Plaintiffs' claims based on the "$100,000 criteria."   A review of these paragraphs demonstrates

---

[3] Defendants' continued use of the "Todd Gray shield" impermissibly construes facts in the light most favorable to the Defendants.  Viewed in the light most favorable to Plaintiffs, it is apparent that Mr. Gray is given selective information, and a less than accurate picture of the situation by Defendants, demonstrating an inference of intent, and knowledge on the part of Defendants of their violations of Constitutional rights.  *See, also, Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012) (explaining in a First Amendment pretext case that inferences can be drawn either in favor of, or against, either side).

[4] Defendants do not challenge the due process allegations – which have been narrowed to a *Mulane* notice and meaningful opportunity claim.  Ostensibly they concede such a claim has been properly plead.

that these criteria constitute a violation of clearly established rights under *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666 (1998). This case held that (1) a candidate debate sponsored by public access television was subject to First Amendment scrutiny; (2) a public access broadcaster may discriminate against candidates based on levels of public support as long as the restrictions are reasonable; but (3) a public access broadcaster may not "suppress expression" because "public officials oppose the speaker's view." *Id.* at 677. The *Forbes* Court likewise noted that "[a] broadcaster cannot grant or deny access to a candidate debate on the basis of whether it agrees with a candidate's views." *Id.* at 676. Furthermore, it is likewise improper if a candidate is excluded to "manipulate" the political process or because of "political pressure inside or outside" of the public broadcaster. *Id.* at 681. The rights set forth in *Forbes* are thus clearly established. The $100,000 criteria, which had to be met *in addition to* the remaining criteria was not reasonable.[5]

Other cases likewise support the challenge to the $100,000 criteria, and the fact that the requiring candidates to raise the $100,000 violated clearly established rights. *Davis v. FEC*, 554 U.S. 724 (2008) (improper for government, under First Amendment, to use wealth in connection with election speech as a criteria); *Lubin v. Panish*, 415 U.S. 709 (1974) (equal protection and First Amendment violated by ballot access provision that required fee -- a wealth based criteria -- for placement on ballot; "fees, however large, do not, in and of themselves, test the genuineness of a candidacy or the extent of the voter support of an aspirant for public office. A large filing fee … is not a certain test of whether the candidacy is serious or spurious. A wealthy candidate with not the remotest chance of election may secure a place on the ballot by writing a check. …

---

[5] Indeed, *Forbes* involved a situation whereby there were multiple paths to qualification, none of which the candidate met. Originally, Defendants adopted multiple paths to qualification, but abandoned this approach and thus required any candidate who desired to participate to raise $100,000, as explained in the Amended Complaint.

We have also noted that prohibitive filing fees … can effectively exclude serious candidates. Conversely, if the filing fee is more moderate, as here, impecunious but serious candidates may be prevented from running. Even in this day of high-budget political campaigns some candidates have demonstrated that direct contact with thousands of voters by 'walking tours' is a route to success."); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966) (wealth cannot be the litmus test for exercise of rights).

Defendants curiously argue that Plaintiffs do not have standing to address the $100,000 criteria. In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-04 (1998), the Supreme Court held that standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury.  The Amended Complaint alleges that Plaintiffs were unconstitutionally deprived of participation in the debate, that the injury was caused by Defendants, and that a judicial decision in their favor would redress the injury.  Plaintiffs have standing and are asserting valid claims.

Contrary to Defendants' statements, Plaintiffs' pleadings do not state that they do not accept any donations.  But the Amended Complaint does state that the $100,000 criteria exclude those who "refuse donations from Political Action Committees (or so-called bundled contributions) because it is easily manipulated to be a measure of a candidate's personal wealth, versus level of support.  A wealthy candidate could simply donate that amount to himself or herself, while a candidate without such wealth cannot."  These issues are consistent with Libertarian values.[6]  As

---

[6] See, e.g. "We oppose all forms of government subsidies and bailouts to business, labor, or any other special interest."  http://www.lp.org/platform  "We call for an end to any tax-financed subsidies to candidates or parties and the repeal of all laws which restrict voluntary financing of election campaigns."

explained below, however, it is not merely the $100,000 threshold by itself that creates problems, but also the fact that this requirement must be met, along with others.

### C. The Equal Protection claim is properly pled and states a valid claim.

Paragraphs 15, 24, 25 and 33 of the Amended Complaint, among others, assert valid claims of Equal Protection violations. Citizens have a clearly established "constitutionally protected right to participate in elections on equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). In *Williams v. Rhodes*, 393 U.S. 23 (1968), the Court struck down an Ohio ballot access law due to its different treatment of established and new political parties.

Equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). *See also, Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Equal Protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable"); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes"). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an "identifiable group." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Claims are also authorized against individuals or particular organizations who are invidiously discriminated against. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

Contrary to Defendants' assertions, Plaintiffs' equal protection claims are not centered upon the general notion of the imposition of objective criteria. Their challenge is, instead, centered upon

two separate premises.  First, the fact that one set of criteria (or no criteria at all) were used to invite Senator McConnell and Secretary Grimes, and a new set of criteria were used to exclude Mr. Patterson.  (Proposed Amended Complaint).  Second, the $100,000 criteria violates equal protection grounds.  *Lubin*, 415 U.S. 709 (1974).  And third, the polling requirement to poll at 10%, within a week of the deadline to qualify for ballot access, has equal protection implications.

Had the criteria at issue been in place from the start -- or at least had they been in place when the first invitations for the general election debate had been sent in February -- the claim would be narrowed.  But they were not.  The imposition of one set of criteria, to invite (or exclude) one set of candidates (i.e. incumbents and major party candidates) and another set of criteria to invite (or exclude) other candidates, impinges on fundamental rights, including the right to associate, the right to vote, and the right to communicate to voters under the First Amendment, and, as such, is subject to strict scrutiny.  *Harper v. Virginia Board of Elections*, 383 U.S. 663, 670 (1966).  The application of one set of criteria to one set of candidates, and another set of criteria to a second set of candidates, cannot and does not meet a compelling state interest, and therefore is unconstitutional.  The equal protection clause of the Fifth or Fourteenth Amendment prohibits government actors from applying different legal standards to similarly situated individuals. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Plaintiffs' claims for violation of the Equal Protection Clause are, therefore, not futile.

### D.     The August 15, 2014 deadline is properly pled and states a valid claim.

Defendants argue that Plaintiffs' claims of discrimination as a result of KET's August 15, 2014 qualification deadline are futile.  They claim that Plaintiff Patterson cannot reasonably claim discrimination as a result of the August 15 deadline because he had ten months (from November

9, 2013 through August 12, 2014) in which to file his ballot access petition and  meet the KET criteria of having raised $100,000 and generating 10% support in the polls.

As a practical matter, Plaintiff Patterson could not have raised $100,000 and generated 10% support in the polls until after he filed his ballot access petition on August 11, 2014. Accordingly, Paragraph 35 of the Amended Complaint asserts that the August 15, 2014 deadline "has the effect of practically prohibiting any such third party candidate from reasonably qualifying, since there would be insufficient time to raise funds, and since such candidates are typically not included in media outlets or releases, or in polling, prior to ballot qualification."   The Amended Complaint alleges that Defendant knew of and intended this effect in order to exclude Plaintiffs from the debate.

Given the facts of this case and the realities of being a third party candidate, Plaintiffs' allegations based on the August 15, 2014 deadline state a claim to relief that is plausible on its face.  The claims are not futile and should be determined, on the merits, by a jury at trial.  As explained below, however, it is not merely the deadline that is the issue, but the fact that the deadline had to be met, along with all of the other criteria.

### E.  The criteria worked in tandem to exclude all third party candidates, viable or not, and those with public support, or not.

Defendants, aware that the Plaintiffs lodged claims against the criteria in tandem, challenged Plaintiffs' arguments on the criteria as if they were separate.  This too, is too clever by half.  The appropriate consideration is not merely whether each criteria "individually creates an impermissible burden but rather whether the combined effect of the applicable … regulations creates an unconstitutional burden on First Amendment rights." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 586 (6th Cir. 2006).  The Sixth Circuit in *Blackwell* noted that the U.S. Supreme Court "has consistently noted the fundamental interest of citizens to create and develop

new political parties." *Id.* ""[I]t is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group." *Id.* Furthermore, "[a] burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." *Id.* "It discriminates against those candidates - and of particular importance - against those voters whose political preferences lie outside the existing political parties." *Id.*

Attempting to turn *Forbes*, a case which stood for the proposition that a public broadcaster could exclude a candidate from a public debate on the grounds of lack of public support, where it met *none of several criteria*, on its head, Defendants in the present case required any candidate wishing to appear in its debate to meet four separate criteria, to do so with no public notice of what those criteria were in advance (in no small part because the criteria kept changing), and to do so – for third party candidates like Patterson who had measurable levels of public support and had qualified for the ballot – within days of the filing deadline for qualifying for the ballot. The criteria, in tandem, violate Plaintiffs' clearly established constitutional rights. Plaintiffs' Amended Complaint is far from futile.

**3.     The Money Damages Claims Could Not Have Been Pled at the Outset and are Cognizable**

Defendants take a significant amount of space arguing that Plaintiffs should have included money damage claims in their initial Complaint. However, at the time this matter was filed, Mr. Patterson had not yet been excluded from the debate. It appeared that he may be excluded, but he was not yet actually excluded. Therefore, the fact that he was excluded, and the damages that stem from his exclusion arose *after* this matter was filed. The Civil Rules allow amendments of pleadings to include items that occur during the pendency of litigation. FRCP 15(d). Those same considerations, incidentally, would permit an entirely new lawsuit, against the individual capacity

11

defendants, for his actual exclusion under the claims asserted in the Amended Complaint. *Maharaj v. BankAmerica Corp.*, 128 F.3d 94 (2d Cir. 1997); *Curtis v. Citibank*, N.A., 226 F.3d 133, 139 (2nd Cir. 2000); *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731, 739 (9th Cir. 1984); *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328-29 (1955) (the fact that a prior suit requested a preliminary injunction which, if granted, would have prevented the second suit from arising is not enough to make the two suits one cause of action).  Plaintiffs thought it better to bring all of their claims in one suit, not two.  That said, the money damages are cognizable and properly plead.

The basic purpose of damages under 42 U.S.C. § 1983 is compensatory. *Carey v. Piphus*, 435 U.S. 247, 254-255, 266 (1978). Section 1983 damages are based on the interests designed to be protected by the right that was violated. *Id.*

Compensatory damages for section 1983 claims are not a simple matter of applying damage formulas from tort law, or quantifying out-of-pocket expenses. *Carey*, 435 U.S. at 258, 98 S. Ct. at 1049.  "Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . ., personal humiliation, and mental anguish and suffering.'" *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (ellipsis in original)). A plaintiff may recover for "distress," defined as "mental suffering or emotional anguish." *Carey*, 435 U.S. at 260-64 & n.20, 98 S. Ct. at 1050-53 & n.20; *see also Bernheim v. Litt*, 79 F.3d 318, 326 (2d Cir. 1996) (finding that First Amendment retaliation claim alleging that defendant's actions caused "'great worry and unhappiness' could reasonably be read as a claim for emotional distress, a legally recognized and compensable harm").

Numerous cases stand for the proposition that, if, as alleged, and as Plaintiffs intend to prove in the trial of this matter, Defendants unconstitutionality deprived Plaintiffs of the ability, and right, to participate in the debate, the measure of damages is appropriately set at the cost or fair market value of such participation. *Wheeler v. Pleasant Grove*, 896 F.2d 1347 (11th Cir. 1990); *Cunningham v. Overland*, 804 F.2d 1066 (8th Cir. 1986); *Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir. 1986); *Rhode Island Affiliate, American Civil Liberties Union, Inc. v Rhode Island Lottery Com.*, 553 F Supp 752 (DC RI 1982).

Defendants – experts – and the entire television industry understands viewer share, marketing, and the cost to provide and obtain media and television exposure. People in the industry, including expert witnesses, can and do put a price tag on these items. Mr. Patterson's allegations are that he was unconstitutionally deprived of such exposure, and the Amended Complaint states a valid claim for that loss. Plaintiffs will establish the amount and nature of these losses at a trial on the merits of the case. Plaintiffs have stated a claim for these amounts, and such claims are not "futile."

4.     **Plaintiffs did not Waive their Right to a Jury Trial**

Plaintiffs did not waive their right to request a jury trial in their Amended Complaint by not including the request in their original Complaint. The original Complaint did not trigger the right to a jury trial as it did not seek money damages (nor had money damages been suffered at that point in time). Where an issue is clearly one solely cognizable in equity, plaintiff is not entitled to a trial by jury as a matter of right. *Morgantown v Royal Ins. Co.*, 169 F.2d 713 (4th Cir. 1948), aff'd 337 US 254 (1949); *Sheila's Shine Products, Inc. v Sheila Shine, Inc.,* 486 F.2d 114 (5th Cir. 1973).

The Sixth Circuit has previously addressed this very question. In *Allied Industrial Workers v General Electric Co.* 471 F.2d 751 (6th Cir. 1973), plaintiffs filed a complaint that did not include a claim for money damages and for which they were not entitled to a jury trial. *Id.* Plaintiffs then sought to amend the complaint to include a money damages claim, which triggered the right to a jury trial. *Id.* The trial court held that plaintiffs waived their right to a trial by jury by not requesting it in the original complaint. *Id.* The Sixth Circuit reversed, noting that the right was not waived and the demand was made timely, since it was made in a pleading that first gave rise to the right to a jury trial. *Id.* Defendants do not even cite to this controlling authority, much less distinguish it, which happens to square on all fours with the facts in the present case. They instead cite to cases where the right to a jury trial attached from the outset, and the demand was not made. That is not this case.

**5.** **Conclusion**

For the foregoing reasons, Plaintiffs have established that their Amended Complaint is not futile, that they have properly plead claims upon which relief can be granted, particularly when all reasonable inferences are drawn in their favor, and that they are entitled to file their Amended Complaint in this matter.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/ Jack S. Gatlin
Jack S. Gatlin (KBA 88899)
Thomas B. Bruns (KBA 84985)
FREUND, FREEZE & ARNOLD
Chamber Office Park
2400 Chamber Center Drive, Ste 200
Ft. Mitchell, KY 41017
Phone: (859) 292-2088
Fax: (859) 261-7602
jgatlin@ffalaw.com

/s/ Brandon N. Voelker
Brandon N. Voelker (KBA 88076)
4135 Alexandria Pike, Suite 109
Cold Spring, KY 41076
859/781-9100 (v)
859/781-9190 (f)
bnvoelker@msn.com

**Attorneys for Plaintiffs**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I have served the foregoing upon the CM/ECF system, which will provide notice of service upon all counsel and attorneys of record, this 15th day of December, 2014.

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)

15