UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LIBERTARIAN NATIONAL COMMITTEE, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 14-63-GFVT |
| V. | ) ) | **MEMORANDUM OPINION** |
| DR. TERRY HOLIDAY, et al., | ) ) | **&** **ORDER** |
| Defendants. | ) ) ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court upon the Defendants' Motion for Partial Dismissal on the Pleadings. [R. 42.] The Defendants maintain that new allegations contained in the Plaintiffs' amended complaint amount to "[o]ld claims dressed up in new theories that still fail as a matter of law," and petition the Court to dismiss each of those recently added defendants and claims from this action. [R. 42-1 at 2.] For the reasons explained below, the Defendants' motion will be GRANTED IN PART.

**I**

In October 2014, Kentucky Educational Television ("KET") hosted the only statewide, televised debate between the two major party candidates for Kentucky's United States Senate seat: Mitch McConnell, a Republican, and Alison Lundergan Grimes, a Democrat. Two weeks before the debate, Plaintiffs Libertarian National Committee, Inc., the Libertarian Party of Kentucky, and David Patterson—then a senatorial candidate representing the Libertarian Party— asked the Court to issue a preliminary injunction requiring KET to include Patterson in the broadcast, insisting that his exclusion would "deprive Plaintiffs of their First Amendment rights."

[R. 4-6 at 9.] In particular, the Plaintiffs alleged that KET's decision to exclude Patterson demonstrated "a clear viewpoint based discriminatory intent." [R. 4-6 at 6.] On October 11, 2014, following an extensive evidentiary hearing, this Court denied the Plaintiffs' motion. [R. 28.] Upon thorough review of the record, the Court concluded that "KET's actions and discussions were aimed at excluding non-serious candidates, not viewpoints," and thus the network's decision to exclude Patterson landed squarely "within the bounds of the First Amendment." [*Id.* at 16.]

In July 2015, the Plaintiffs filed a second suit arising out of the same controversy, but this time they chose a somewhat different tack—in addition to suing KET's employees in their official capacities, the Plaintiffs also advanced "individual money damage claims" against KET employees pursuant to 42 U.S.C. § 1983. [R. 44 at 2.] The Court subsequently consolidated that new suit with the old one, and all of the claims against the Defendants—in both their official and individual capacities—were incorporated into the Plaintiffs' amended complaint. [R. 41.]

The Defendants thereafter filed the present Motion for Partial Dismissal on the Pleadings. [R. 42-1 at 2.] They now ask the Court "to dismiss the new defendants and amended claims and finally adjudicate this case's original, and remaining, pretext and procedural due process claims against the official-capacity defendants." [*Id.* at 26.] Specifically, the Defendants seek dismissal of the Plaintiffs' (1) new claims against five of the Defendants in their individual capacities, (2) allegation that "KET's $100,000 contribution criteria was *ipso facto* unconstitutional," (3) claim that the Defendants' August 15, 2014 deadline for meeting the debate invitation criteria violated

Patterson's constitutional rights, and (4) argument that KET's invitation criteria violated the Equal Protection Clause.[1]  [*Id.* at 26-27.]

## II

### A

In evaluating the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). Dismissal is ordinarily appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DirecTV, Inc.*, 487 F.3d at 476 (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Moreover, the facts pled in support of the plaintiff's claims must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between

---

[1] Although the parties do not address the issue of mootness, the Court recognizes that the timeline of this case arguably raises mootness concerns. The Court notes, however, that even mooted claims may remain before the Court when the plaintiff's alleged injury is capable of repetition, yet evading review. *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998). This exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* Given that (1) the issues presented here depend entirely on the cyclical nature of the election process and (2) it is reasonable to expect that the Plaintiffs will mount another election campaign in the future, the Court finds that this dispute falls easily within the foregoing exception. *Cf. Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (noting "[c]hallenges to election laws are one of the quintessential categories of cases" that typically evade review "because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election.").

possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

To demonstrate facial plausibility, "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). These requirements "serve[] the practical purpose of preventing a plaintiff with 'a largely groundless claim' from 'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 550 U.S. at 545-46 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Further, Rule 12(b) provides this Court with "the authority to turn a motion to dismiss into a motion for summary judgment where the court is presented with materials outside the pleadings." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund,* 203 F.3d 926, 931 (6th Cir. 2000). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine dispute exists when the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Put differently, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

The moving party has the initial burden of identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding*, 285 F.3d 415, 424 (6th Cir. 2002). Moreover, the movant may satisfy its burden by showing "that there is an

absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, "the nonmoving party must go beyond the pleadings and come forward with specific facts to show there is a genuine issue for trial." *Chao*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). The nonmoving party, however, "must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Chao*, 285 F.3d at 424 (internal citations omitted).

Additionally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Finally, in reviewing a motion for summary judgment, courts "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

**B**

When public broadcasters choose to exclude certain candidates from a political debate, such restrictions are constitutional "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). The decision to exclude a particular candidate will frequently rest on the "journalistic discretion of broadcasters," and the Court recognizes that "in many cases it is not feasible for the broadcaster to allow unlimited access to a candidate debate." *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 676

(1998) (quotations omitted).  A broadcaster may, for example, reasonably exclude candidates because they have "not generated appreciable voter support."  *Id.* at 671.  If the right of access to nonpublic fora "were given sweeping application in this context, courts 'would be required to oversee far more of the day-to-day operations of broadcasters' conduct, deciding such questions as whether a particular individual or group has had sufficient opportunity to present its viewpoint and whether a particular viewpoint has already been sufficiently aired."  *Id.*  (quoting *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 105 (1973)).  That is not the court's role.  Instead, the court's principal task is to ensure that broadcasters apply neutral criteria for participating in a candidate debate, which is to say that officials may not "grant or deny access to a candidate debate on the basis of whether [they] agree[] with a candidate's views."[2]  *Forbes*, 523 U.S. at 680.

## C

### i

As a preliminary matter, the Court notes that the procedural posture of this case—which includes an existing evidentiary record developed for the purposes of the preliminary injunction hearing, but no subsequent discovery—complicates our location of the appropriate standard of review.  This confusion is amplified by the fact that the Defendants, in their Motion for Partial

---

[2] The Plaintiffs also cite *Forbes*'s brief suggestion that broadcasters cannot "manipulate" the political process by excluding candidates on account of "political pressure inside or outside" of the broadcast station.  [R. 41 at 19.]  The Plaintiffs largely fail to revisit this aspect of *Forbes*' analysis, with the exception of one conclusory, half-hearted allegation that the Defendants engaged in "manipulation" of the process due to some undefined "political pressure."  [*Id.* at 20.]  In a latter clause of the same sentence, the Plaintiffs indicate this "manipulation" occurred in connection with KET's desire to exclude "Mr. Patterson's viewpoints."  [*Id.*]  Thus, the allegation appears inextricably bound up in the Plaintiff's argument regarding viewpoint discrimination.  To the extent that the Plaintiffs intended to assert a standalone claim in relation to this "political pressure" prohibition, however, the Court finds they have facially failed to state any facts plausibly indicating that such pressure took place.  The Plaintiffs' claim therefore fails at the pleading stage.

Dismissal on the Pleadings, supply no standard of review and cite to no Federal Rule of Civil Procedure.  Instead, the Defendants provide an unwieldy exposition of various arguments, some applicable to Rule 12(b)(6) and others cognizable only under Rule 56(c).  Thus, in the analysis that follows, the Court will alternately draw from both standards of review.

ii

Before reaching the substance of the Plaintiffs' allegations, the Court must address the Defendants' initial contention that these claims fail to implicate a legally cognizable injury.  The Defendants cite *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986), for the proposition that plaintiffs cannot state a claim under § 1983 arising only out of the "'abstract' value or 'importance' of constitutional rights.'"  *Id.* (citation omitted).  The Court in *Stachura* held a claim for compensatory damages "may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'"  *Id.* at 307 (citation omitted).  The Plaintiffs have carried this burden, seeking compensation for a loss in the "advertising and exposure" received by candidates who participate in televised debates.  [R. 41 at 22.]  Although the Defendants argue that "nothing came out of [the Plaintiffs'] pockets" as a result of Patterson's exclusion [R. 46 at 6], *Stachura* expressly holds that a showing of actual out-of-pocket loss is not required in this context.  *See also City of Watseka v. Illinois Pub. Action Council*, 796 F.2d 1547, 1559 (7th Cir. 1986) *aff'd,* 479 U.S. 1048 (1987) (affirming damages award in § 1983 action resulting in part from plaintiff's "inability to recruit new members" or "disseminate its views"); *Nixon v. Herndon,* 273 U.S. 536, 547 (1927) (holding prevention from voting in primary election amounted to compensable injury).  Common sense holds that Patterson's exclusion from the only

7

televised debate in Kentucky's Senate race resulted in a loss of "exposure and advertising," and that such a loss plausibly caused financial and reputational injury.

Having established that the Plaintiffs allege a cognizable injury, the Court must next determine whether each of the Plaintiffs' individual-capacity claims satisfy the pleading requirements of Rule 12(b)(6).[3]  As all parties recognize, KET's individual officers enjoy qualified immunity from suit.  The doctrine of qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The Plaintiffs argue that, because qualified immunity cases so often require a fact-intensive inquiry, dismissal at this juncture would be, "[a]t a minimum . . . premature."  [R. 44 at 16.]  They emphasize, for example, that the Sixth Circuit has held "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."  *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015);  *see also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 234 (6th Cir. 2005) (Sutton, J., concurring) (noting it is ordinarily "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*.") (emphasis in original); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) (finding that "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").

---

[3] In addition to the arguments analyzed below, the Defendants offer the puzzling claim that "[t]here is no reason the Libertarians could not have asserted all of the claims in their Amended Complaint as part of their original Complaint," and thus their new claims for money damages amount to "procedural gamesmanship" in violation of Fed. R. Civ. P. 38.  [R. 42-1 at 8.]  Needless to say, the Plaintiffs did not initially seek monetary compensation for injuries arising out of Patterson's exclusion from the debate for one conspicuous reason: the debate had not yet occurred.

Although these precedents establish that dismissal on qualified immunity grounds is typically inadvisable, they certainly do not pose an absolute bar to the use of 12(b)(6) in this context.  As Judge Easterbrook clarified in *Jacobs*, "[i]t is not possible to exclude use of Rule 12(b)(6)" in all cases where defendants invoke qualified immunity.  *Jacobs*, 215 F.3d at 775.  A plaintiff, for example, may "set[] out a 'claim' . . . yet narrate[] facts showing that it is impossible to award relief," or the pleaded facts "designed to skirt around immunity may reveal the claim's substantive weakness and justify dismissal on the merits."  *Id*;  *see also Bloch v. Ribar*, 156 F.3d 673, 687 (6th Cir. 1998) (noting that, at the pleading stage, plaintiffs are at least "required to plead with enough specificity to create a foundation for recovery against the defense of qualified immunity."); *Goad v. Mitchell*, 297 F.3d 497, 505 (6th Cir. 2002) (holding that, in order to defeat a qualified immunity defense in cases requiring proof of wrongful motive, plaintiffs must at least plead "nonconclusory allegations of fact . . . that provide circumstantial evidence of improper intent."); *Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994) (dismissing claim against individual officers under 12(b)(6) and noting "[w]hat this complaint alleges does not state a claim under the Constitution, let alone suggest a violation of clearly established rights.").

The Court concludes that the lesson to be learned from the foregoing cases is this: although it is "generally inappropriate" to dismiss a plaintiff's claim on qualified immunity grounds, this recognition does not remove the Court's overarching responsibility to ensure that all complaints—including those that implicate qualified immunity and those that do not—comply with the basic pleading requirements of Rule 12(b)(6).  For this reason, the Court must still address the threshold question required of all inquiries under 12(b)(6)—namely, whether the Plaintiffs' complaint plausibly makes out a constitutional violation of any kind.  In the present

case, then, the Plaintiffs' complaint must, at a bare minimum, plead nonconclusory allegations that provide plausible circumstantial evidence of the Defendants' intent to exclude Patterson on the basis of his viewpoint.  If the Plaintiffs carry this burden, however, the next stage of the qualified immunity test—which concerns the question of whether the rights in dispute were clearly established—requires a finely shaded analysis better suited to Rule 56(c).

To determine whether the Plaintiffs' individual-capacity claims against Defendants Goodman, Hopkins, Clark, Bischoff, and Brower meet 12(b)(6)'s threshold requirement, the Court must examine the pleaded facts relevant to each Defendant.  When conducting this evaluation, the Court may consider only (1) the factual content of the Plaintiffs' amended complaint, accepted as true, and (2) any pertinent exhibits attached thereto.  *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (noting that, when addressing a 12(b)(6) motion, courts "may consider 'exhibits attached [to the complaint] . . . so long as they are referred to in the complaint and are central to the claims contained therein.").

The Court begins by noting that the Plaintiffs' claims against Goodman plainly fail to satisfy 12(b)(6)'s requirements.  The complaint mentions Goodman on four occasions.  Two of these appear in the conclusory catch-all allegations included at the beginning and end of the complaint, where the Plaintiffs simply announce that (1) Goodman was "involved in the actions and approvals complained of herein" and (2) all of the individually named Defendants, including Goodman, were "involved in the complained of conduct herein [and] personally participated in same."  [R. 41 at 8, 22.]  The Plaintiffs' mere suggestion that Goodman was somehow "involved" in the conduct alleged, without more, is insufficient to survive dismissal.  *See, e.g., Iqbal*, 556 U.S. at 664 (holding plaintiff's claims that one defendant was the "principal architect" of a discriminatory policy and another was "instrumental" in its adoption and execution, without

10

supporting facts, were "conclusory and not entitled to be assumed true."); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011) (dismissing First Amendment claims and noting "[n]one of these bare allegations provide the factual context that would render them plausible and thus entitle them to a presumption of truth at this stage in the litigation."). In the remaining two references to Goodman, the Plaintiffs state that he (1) was merely one of several recipients of an email and (2) "made various comments about candidate Shawna Sterling" in an unrelated email. [R. 41 at 11, 14.] The attached exhibit shows that these "various comments" have nothing to do with restricting Sterling's speech, make no reference to Patterson, and are otherwise irrelevant to the Plaintiffs' claims. [R. 41-7.] Thus, the Plaintiffs have failed to state a claim against Goodman upon which relief can be granted.

Next, the Plaintiffs indicate that another individual Defendant, Shae Hopkins, "has overall organizational and executive control, subject to the Board of Directors, of KET and KAET." [*Id.* at 8.] The fact that Hopkins exercises supervisory control over KET's employees, standing alone, cannot support an inference of liability under § 1983. Instead, the Plaintiffs must allege that Hopkins "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted) (internal quotations omitted). Here, the Plaintiffs mention Hopkins numerous times in the body of the complaint. These facts describe Hopkins's correspondence with Brower regarding KET's evolving criteria for participation in the debate, including a message to Hopkins wherein Brower states that he wants to "get [the new criteria] on the record today since this will eliminate the write in and other candidate from the forum." [R. 41 at 13.] The complaint further states that "[t]he only non-write in candidate [that] would be excluded as the 'other candidate' was Mr. Patterson." [*Id.* at 13-14.] These allegations at least plausibly support the Plaintiffs'

11

catch-all claim that Hopkins was "intimately involved in the complained of conduct" [*Id.* at 22],

and that she encouraged Patterson's exclusion from the debate.  Although the facts undeniably

fail to prove that Hopkins encouraged others to exclude Patterson on the basis of his viewpoint,

the Court recognizes the difficulty of proving such intent at the pleading stage.  It is enough,

under 12(b)(6), to conclude that the Plaintiffs' complaint provides plausible circumstantial

evidence to support their allegations.  *Cf. Goad*, 297 F.3d at 505 (requiring "nonconclusory

allegations of fact . . . that provide circumstantial evidence of improper intent" to survive a

motion to dismiss).

The Plaintiffs further allege that the third Defendant named in her individual capacity,

Deidra Clark, (1) conducted research for the purpose of establishing invitation criteria and (2)

aided in drafting the revised criteria that resulted in Patterson's exclusion from the debate.

Additionally, Brower mentions Clark in the aforementioned email, indicating she "was most

concerned that we get [the new criteria] on the record today since this will eliminate the . . . other

candidate from the forum."  [R. 41 at 13.]  Although these facts similarly fail to prove that Clark

wished to exclude Patterson on the basis of his viewpoint, they provide adequate circumstantial

evidence to surmount the low bar set by 12(b)(6).

Likewise, the facts supporting the Plaintiffs' claims against Defendant Timothy Bischoff

are sufficient to survive dismissal.  The amended complaint indicates Bischoff sent an email to

KET employees stating, "[p]lease confirm . . . we did not ***and will not*** invite David Patterson . . .

to the October 13 program, because [he] did not meet our pre-established criteria."  [*Id.* at 14.]

(emphasis in original).  The Plaintiffs argue this comment demonstrates an intent to eliminate

Patterson "regardless of whether or not [he eventually met] the existing criteria."  [*Id.* at 14.]

Further, the Plaintiffs cite an additional email wherein Bischoff apparently references the racist

ideology of an excluded white supremacist candidate.  [*Id.*]  The Plaintiffs contend this statement shows that the criteria "were adopted for the purpose of excluding particular candidates and viewpoints."  [*Id.* at 15.]  Although these comments, like all those appearing in the Plaintiffs' complaint, do not prove that anyone wished to exclude Patterson because of his viewpoint, they provide enough circumstantial evidence to defeat dismissal at the pleading stage.

Finally, the Plaintiffs also plead sufficient factual allegations against Defendant Mike Brower.  The amended complaint provides facts indicating Brower was ultimately "responsible for programming decisions," that he expressed a desire to "eliminate" Patterson from the debate using the revised invitation criteria, and that he directly participated in the formulation of the revised criteria.  [R. 10-17.]  For the same reasons explained above, then, the Court cannot dismiss the allegations against Brower under 12(b)(6).

Although the Plaintiffs' claims against four of the five individual-capacity defendants satisfy 12(b)(6)'s pleading requirements, the Defendants insist that the Court may nevertheless grant their motion by "simply treat[ing] it as a Rule 56 motion for summary judgment."  [R. 46 at 5.]  Converting this motion pursuant to Rule 12(d) would permit the Court to consider the full range of arguments offered by the Defendants in opposition to the Plaintiffs' amended complaint, including numerous citations to the existing evidentiary record, references to the Court's previous injunction order, and summary appeals to sound public policy.  As Rule 12(d) qualifies, however, such a conversion is appropriate only after "[a]ll parties" have been given "a reasonable opportunity to present all the material that is pertinent to the motion."  *See also Plott v. Gen. Motors Corp., Packard Elec. Div.,* 71 F.3d 1190, 1195-96 (6th Cir. 1995) ("Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case.").

13

With this rule in mind, the Plaintiffs note that they "have not even had the opportunity to depose the individual-capacity Defendants yet." [R. 44 at 17.] Moreover, "given the Defendants' waiver of the attorney-client privilege and their attempts to rely on advice of counsel," the Plaintiffs argue that KET's attorney "must be subpoenaed and deposed." [*Id.*] Although the Defendants suggest that discovery conducted prior to the preliminary injunction hearing provides enough evidence to warrant conversion of their motion, the Court finds that the distinct legal standard governing the Plaintiffs' injunction request was too far removed from the present inquiry to provide the Plaintiffs with "a reasonable opportunity to present all the material that is pertinent to" their claims.[4] Fed. R. Civ. P. 12(d). Because the original complaint named the Defendants only in their official capacities, the Plaintiffs essentially sued KET as an institutional entity. *See Gean v. Hattaway,* 330 F.3d 758, 766 (6th Cir. 2003) (noting that "defendants in their official capacities are not recognized as 'persons' under § 1983" and therefore "[t]he real party in interest is not the official, but the government entity whose 'policy or custom . . . played a part in the [alleged] violation of federal law.'") (citation omitted). Additionally, the injunction hearing concerned the narrow question of whether the Court should compel KET to include Patterson in the debate. Thus, *any* finding of probable unconstitutional activity, regardless of which particular Defendants were responsible for that activity, would have supported the Plaintiffs' request for an injunction. Given that (1) the injunction hearing involved a time-sensitive request to enjoin an entity, rather than recover from its individual officers, and

---

[4] The Court also recognizes that, "[a]s a general rule, decisions on preliminary injunctions do not constitute the law of the case and 'parties are free to litigate the merits'" of the dispute giving rise to the injunction hearing. *Wilcox v. United States*, 888 F.2d 1111 (6th Cir. 1989) (citations omitted). Relatedly, the Court's primary ask at the injunction stage was to measure "the likelihood of success on the merits" of the Plaintiff's claim. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). That is a qualitatively different question from the present inquiry, which asks only whether there is plausible circumstantial evidence to support the Plaintiffs' claim of viewpoint discrimination. *Cf. Goad*, 297 F.3d at 505

(2) the lack of individual-capacity defendants precluded any inquiry into whether the constitutional rights at issue were clearly established, the Plaintiffs carried a limited incentive to investigate the unique circumstances surrounding each Defendant's conduct in that time frame.[5] At a minimum, the Court finds the Plaintiffs must be permitted to depose these Defendants in order to satisfy the requirements of Rule 12(d).

**D**

**i**

Unlike the preceding individual-capacity claims, resolution of the Plaintiffs' three remaining arguments will not require additional discovery.  This is true for two reasons.  First, all of these claims could have been—and, to a great extent, were—raised at the injunction stage.  As a consequence, the evidentiary record compiled at that stage directly relates to the Plaintiffs' amended allegations.  The Plaintiffs have failed to identify any outstanding evidence they might need in order to advance these claims, and the Court struggles to imagine what additional evidence would be pertinent to their allegations.  Second, because each of the Plaintiffs' remaining claims attack the constitutionality of the invitation criteria's *content*, the Court finds that the existing evidentiary record—which provides the Court with a complete picture of these criteria, as well as a timeline of their implementation—is more than sufficient to resolve the Plaintiffs' allegations.  The Court therefore concludes that each party has been given "a reasonable opportunity to present all the material that is pertinent to" these claims.  Fed. R. Civ.

---

[5] The Court notes that Defendant Bill Goodman was in fact deposed prior to the injunction hearing. Because the claims against Goodman fail at the pleading stage, however, the Court need not address these allegations under Rule 56(c).

P. 12(d). Accordingly, with the exception of the standing analysis applied below, the Court will

consider the Plaintiffs' remaining allegations under Rule 56(c).[6]

**ii**

The first new claim discussed in the Defendants' motion—which concerns the Plaintiffs'

contention that KET's "$100,000 [invitation] criteria is itself viewpoint discrimination" because

it demonstrates "a bias and slant only to those candidates that believe in significant fundraising"

[R. 41 at 16]—fails at the jurisdictional stage. Before entertaining this allegation, the Court must

first establish that the Plaintiffs have standing to assert such a claim. Constitutional standing

requires the plaintiff to show (1) an "injury in fact", (2) a "causal connection between the injury

and the conduct complained of," and (3) "that the injury will be redressed by a favorable

decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff's injury must be

"concrete and particularized" and not merely "hypothetical." *Id.* Further, in attempting to prove

such an injury, the plaintiff "generally must assert his own legal rights and interests, and cannot

rest his claim to relief on the legal rights or interest of third parties." *Kowalski v. Tesmer*, 543

U.S. 125, 129 (2004) (internal quotations omitted) (citation omitted). Where, as here, the

defendant challenges the plaintiff's standing by presenting evidence outside the pleadings, "no

presumptive truthfulness applies to the [parties'] factual allegations" and "the district court must

therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter

jurisdiction exists or does not exist." *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491

---

[6] Relatedly, the Court also acknowledges its duty to ensure that conversion would not cause any unfair surprise to the Plaintiffs. *See, e.g., Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989). In the present case, the Defendants have expressly argued that (1) no further discovery is needed and (2) the existing evidentiary record warrants review under Rule 56(c). [R. 42-1 at 8, R. 46 at 5.] The Plaintiffs, meanwhile, have maintained that more discovery is necessary. [R. 44 at 2, 17.] Under these circumstances, the Court finds that the Plaintiffs received fair warning of the possibility the Court would review their claims under Rule 56(c).

F.3d 320, 330 (6th Cir. 2007) (citation omitted).

In the present case, the Plaintiffs "readily acknowledge that they are not opposed to all donations." [R. 44 at 22.] In fact, the Defendants' exhibits show that the Plaintiffs engaged in aggressive fundraising during the 2014 Senate election. Patterson's campaign website, for example, provided numerous methods for donating to the campaign, assured donors that their "generous donation" would "help David spread the message of liberty and government accountability throughout Kentucky," allowed donors to set up recurring payments, and reminded supporters that "[e]very bit helps!" [R. 42-2 at 2-3.] Likewise, the Libertarian Party of Kentucky's website encourages visitors to "donate monthly to LPKY" and sets up various levels of monthly donations, from a "basic pledge" to a "gold" or "platinum"-level donation. [R. 42-3 at 3.] The Libertarian National Committee's website similarly provides comprehensive opportunities to donate, encouraging voters to pledge as much as "$500 per month" or make a "one-time contribution" of "$5,000," reminding supporters that "[y]our contribution is essential to our success." [R. 42-4 at 5.]

The Court is not persuaded by the Plaintiffs' attempt to distinguish between those who believe in "significant fundraising," on the one hand, and those who value (presumably) insignificant fundraising on the other. The mere fact that Patterson failed to reach the $100,000 threshold, despite actively fundraising throughout his campaign, might empower him to assert claims on behalf of those who are *unable* to raise the requisite amount. But that is not the claim advanced by the Plaintiffs, nor would such a claim create a cognizable right of action under the First Amendment. Instead, the Plaintiffs profess to belong to a class of persons who, for reasons unknown, believe that raising less than $100,000 harmonizes with their viewpoint, while raising more than that amount does not. Setting aside the peculiarity of such a position, the record

17

altogether fails to show that the Plaintiffs are members of such a class.  Nothing in the Plaintiffs'

repeated, varied, and enthusiastic solicitation of funds indicates they belong to a class of persons

who oppose fundraising equal to or exceeding $100,000.

The Plaintiffs also attempt to establish standing by proposing two alternative arguments.

First, they claim "it is unquestionably the case that the $100,000 criterion was a basis . . . for the

Defendants to exclude Mr. Patterson from the debate," and thus the criterion's role in his

exclusion "conferred standing on him" to challenge the requirement.  [R. 44 at 23.]  But the

Plaintiffs do not allege that Patterson's exclusion from the debate was *ipso facto*

unconstitutional, nor do they claim that contribution-based criteria are unconstitutional in every

case—in fact, they expressly acknowledge that "contribution-based criteria can be

constitutional."  [R. 44 at 25.]  Instead, the Plaintiffs argue *this* criterion violates their First

Amendment rights because it demonstrates a "bias . . . to those candidates that believe in

significant fundraising."  [R. 41 at 16.]  Thus, in order to vindicate the constitutional right at

issue, the Plaintiffs' standing cannot simply turn on the fact of Patterson's exclusion; rather, the

Plaintiffs must show they are members of a class against whom the fundraising requirement

allegedly discriminated.  As previously stated, the Plaintiffs have failed to make such a showing.

Second, in their response to the Defendants' motion, the Plaintiffs attempt to recast the

nature of their opposition to the fundraising requirement.  Rather than argue this criterion

discriminates against candidates who oppose "significant fundraising," the Plaintiffs now

contend the criterion "exclude[s] those who 'refuse donations from Political Action Committees

(or so-called bundled contributions) because [they are] easily manipulated to be a measure of a

candidate's personal wealth, versus level of support."  [R. 44 at 22.]  If KET's criterion did in

fact discriminate against those who refuse donations from Political Action Committees

18

("PACs"), such discrimination might confer standing upon the Plaintiffs. But the criterion did no such thing. Neither the pleaded facts nor the evidence in the record indicates that KET's fundraising requirement imposed a limitation on the *way* in which candidates raised the requisite amount. Rather, the complaint merely states that KET required candidates to raise "$100,000 in contributions," with no qualification regarding the source of those funds.

For the reasons explained above, neither configuration of the Plaintiffs' argument finds support in the record. To the extent that the Plaintiffs claim KET's fundraising criterion discriminates against those who do not believe in "significant fundraising," the Plaintiffs have failed to show they have standing to assert such a claim. And to the extent that the Plaintiffs allege the criterion discriminates against those who refuse contributions from PACs, the Plaintiffs have failed to supply any evidence indicating KET's facially neutral criteria imposed a limitation on the source of the requisite funds. Thus, even accepting that the Plaintiffs have established standing to challenge the fundraising criterion, their claim fails as a matter of law.

### iii

The Plaintiffs' remaining two claims are also ripe for summary judgment. First, the Plaintiffs argue "the deadline of August 15, 2014 to meet the criteria, in connection with any third party candidate who may not have qualified [for ballot access] until the filing deadline [of August 12], has the effect of practically prohibiting any such third party candidate from reasonably qualifying, since there would be insufficient time to raise funds, and since such candidates are typically not included in media outlets or releases, or in polling, prior to ballot qualification." [R. 41 at 16.] The complaint relatedly states that Kentucky election law requires candidates to collect 5,000 signatures in order to receive ballot access, and Patterson did not collect the requisite amount until August 11, 2014, one day before the filing deadline and four

days before the deadline to meet KET's invitation criteria.  [*Id.*]  The Plaintiffs thus apparently

claim that, because Patterson did not achieve ballot access until four days before the deadline to

meet KET's criteria, he did not have enough time to generate the public support necessary to

qualify for the debate.

      This argument fails for two reasons.  To begin, neither KET's invitation criteria nor

Kentucky law required Patterson to collect 5,000 signatures or receive ballot access prior to

soliciting funds or public support.  Second—and most importantly—Kentucky law did not

require Patterson to file for ballot access one day before the deadline.  Instead, Patterson could

have filed at any point throughout a ten-month period beginning in November 2013.  *See* KRS

118.365(3).  His failure to do so apparently resulted from either (1) a lack of support or (2) a

disinterest in complying with Kentucky law until the final hour.  In any case, the record plainly

shows that Patterson himself—rather than KET—is responsible for the condensed time period

between qualifying for ballot access and satisfying the debate criteria.

      Finally, the last allegation in dispute concerns the Plaintiffs' claim that Patterson's

exclusion violated the Equal Protection Clause.  [R. 41 at 24.]  Because the Plaintiffs are not

members of a protected class, the Defendants need only demonstrate a rational basis for

Patterson's exclusion.  *See, e.g., Bd. of Trustees of U. of Alabama v. Garrett*, 531 U.S. 356, 367

(2001).  As previously stated, the Supreme Court has expressly held that public broadcasters may

exclude certain candidates from a political debate for a wide variety of reasons, so long as they

do not "grant or deny access to a candidate debate on the basis of whether [they] agree[] with a

candidate's views."  *Forbes*, 523 U.S. at 680.  The Defendants' proffered reason for excluding

Patterson—that he did not garner enough support to warrant inclusion—falls comfortably within

*Forbes*'s holding that broadcasters may exclude candidates because they have "not generated appreciable voter support." *Id.* at 671.

The Plaintiffs, mindful of these controlling precedents, attempt to circumvent *Forbes* by arguing there is no rational basis for "[t]he imposition of one set of criteria[] to invite (or exclude) one set of candidates (i.e. incumbents and major party candidates) and another set of criteria to invite (or exclude) other candidates." [R. 41 at 24.] That might be true. But the Plaintiffs fail to provide any evidence demonstrating that KET imposed a different set of criteria on incumbents and/or major party candidates. Instead, the Plaintiffs merely show that KET's invitation criteria evolved over time. Nothing about this evolution, however, suggests that the invited candidates were not always subject to the same requirements imposed on all other candidates. If the invited candidates had qualified under only one set of requirements, but not the finalized criteria, the Plaintiffs might plausibly state a claim under the Equal Protection Clause. But that is not what happened. Instead, the record shows that KET invited these two candidates to the debate for a simple reason—they easily met the invitation criteria, in all its iterations and at every stage of the process, and Patterson did not. Because the Plaintiffs offer no evidence reasonably indicating that KET held the invited candidates to a different set of invitation criteria, the Court must find in favor of the Defendants.

### III

For the reasons discussed above, the Court concludes that (1) the Plaintiffs' individual-capacity claims against Defendants Hopkins, Clark, Bischoff, and Brower provide sufficiently plausible circumstantial evidence to survive dismissal under Rule 12(b)(6), and (2) the Plaintiffs' remaining three claims fail as a matter of law. Accordingly, the Defendants' Motion for Partial

Dismissal on the Pleadings **[R. 42]** is **GRANTED IN PART**, and the Court **HEREBY ORDERS** as follows:

      1.     Defendants' motion to dismiss the Plaintiffs' claims against Defendant Bill Goodman in his individual capacity is **GRANTED**;

      2.     Defendants' motion to dismiss the Plaintiffs' claims against Defendants Hopkins, Clark, Bischoff, and Brower in their individual capacities is **DENIED**; and

      3.     The Court **GRANTS** summary judgment in favor of the Defendants with respect to the Plaintiffs' claims regarding (1) the $100,000 invitation criteria, (2) the August 15, 2014 filing deadline, and (3) alleged violations of the Equal Protection Clause.

      This 5th day of February, 2016.

Gregory F. Van Tatenhove
United States District Judge

22